# Exhibit A

**Appendix XII-B1**

| | | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|---|
|  | **CIVIL CASE INFORMATION STATEMENT (CIS)**<br><br>Use for initial Law Division<br>Civil Part pleadings (not motions) under *Rule* 4:5-1<br>**Pleading will be rejected for filing, under *Rule* 1:5-6(c), if information above the black bar is not completed or attorney's signature is not affixed** | PAYMENT TYPE: ☐CK ☐CG ☐CA<br>CHG/CK NO.<br>AMOUNT:<br>OVERPAYMENT:<br>BATCH NUMBER: |

| ATTORNEY / PRO SE NAME<br>David T. Shulick, Esquire | TELEPHONE NUMBER<br>(215) 988-5488 | COUNTY OF VENUE<br>Camden |
|---|---|---|
| FIRM NAME (if applicable)<br>Shulick Law Offices | | DOCKET NUMBER (when available)<br>L-5675-11 |
| OFFICE ADDRESS<br>Two Logan Square, Suite 1900<br>100 N. 19th Street<br>Philadelphia, PA 19103 | | DOCUMENT TYPE<br>Complaint |
| | | JURY DEMAND ■ YES ☐ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>Marguerite McNamee, Plaintiff | CAPTION<br>Marguerite McNamee v. Johnson & Johnson Pharmaceuticals |
|---|---|
| CASE TYPE NUMBER (See reverse side for listing)<br>699 | IS THIS A PROFESSIONAL MALPRACTICE CASE?   ☐ YES   ■ No<br>IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
| RELATED CASES PENDING?<br>■ Yes   ☐ No | IF YES, LIST DOCKET NUMBERS<br>L-3309-10 |
| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?<br>☐ Yes   ☐ No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)<br>☐ NONE<br>■ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?<br>☐ Yes   ■ No | IF YES, IS THAT RELATIONSHIP:<br>☐ EMPLOYER/EMPLOYEE      ☐ FRIEND/NEIGHBOR   ☐ OTHER (explain)<br>☐ FAMILIAL                        ☐ BUSINESS |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?   ☐ YES   ☐ No |
|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

SUPERIOR COURT LAW DIV   11 NOV 14 PM 3:53   RECEIVED

| ♿ | DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ Yes   ☐ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|---|
| | WILL AN INTERPRETER BE NEEDED?<br>☐ Yes   ■ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE:



**Side 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule 4:5-1*

## CASE TYPES (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I - 150 days' discovery
| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | BOOK ACCOUNT (debt collection matters only) |
| 505 | OTHER INSURANCE CLAIM (including declaratory judgment actions) |
| 506 | PIP COVERAGE |
| 510 | UM or UIM CLAIM (coverage issues only) |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 512 | LEMON LAW |
| 801 | SUMMARY ACTION |
| 802 | OPEN PUBLIC RECORDS ACT (summary action) |
| 999 | OTHER (briefly describe nature of action) |

### Track II - 300 days' discovery
| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 599 | CONTRACT/COMMERCIAL TRANSACTION |
| 603N | AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold) |
| 603Y | AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold) |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE – PROPERTY DAMAGE |
| 621 | UM or UIM CLAIM (includes bodily injury) |
| 699 | TORT – OTHER |

### Track III - 450 days' discovery
| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 602 | ASSAULT AND BATTERY |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |

### Track IV - Active Case Management by Individual Judge / 450 days' discovery
| | |
|---|---|
| 156 | ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 513 | COMPLEX CONSTRUCTION |
| 514 | INSURANCE FRAUD |
| 620 | FALSE CLAIMS ACT |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRITS |

### Centrally Managed Litigation (Track IV)
| | | | |
|---|---|---|---|
| 280 | ZELNORM | 290 | POMPTON LAKES ENVIRONMENTAL LITIGATION |
| 285 | STRYKER TRIDENT HIP IMPLANTS | 291 | PELVIC MESH/GYNECARE |
| 288 | PRUDENTIAL TORT LITIGATION | 292 | PELVIC MESH/BARD |
| 289 | REGLAN | 293 | DEPUY ASR HIP IMPLANT LITIGATION |

### Mass Tort (Track IV)
| | | | |
|---|---|---|---|
| 248 | CIBA GEIGY | 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL |
| 266 | HORMONE REPLACEMENT THERAPY (HRT) | 282 | FOSAMAX |
| 271 | ACCUTANE/ISOTRETINOIN | 284 | NUVARING |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 286 | LEVAQUIN |
| 278 | ZOMETA/AREDIA | 287 | YAZ/YASMIN/OCELLA |
| 279 | GADOLINIUM | 601 | ASBESTOS |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics.

**Please check off each applicable category** ☐ **Putative Class Action** ☐ **Title 59**

MARGUERITE McNAMEE,                    :     SUPERIOR COURT OF NEW JERSEY
Individually, and on Behalf of all Others  :     LAW DIVISION, CAMDEN COUNTY
Similarly Situated                     :
229 Stirrup Road                       :          SUPERIOR COURT/LAW DIVISION
Swedesboro, NJ 08085                   :
                                       :
       v.                              :
                                       :
JOHNSON & JOHNSON                      :     NO.  L-5675-11
PHARMACEUTICALS                        :
One Johnson & Johnson Plaza            :
New Brunswick, NJ 08933                :

## COMPLAINT

Plaintiff, Marguerite McNamee, by and though her attorneys, individually and on behalf

of all others similarly situated throughout the State of New Jersey who purchased Neosporin®

NEO TO GO!® first aid antiseptic spray, files this Complaint, and in support thereof, states as

follows:

### INTRODUCTORY ALLEGATIONS

1.      Plaintiff is Marguerite McNamee, an adult citizen and resident in the State

of New Jersey, who resides at the address set forth in the caption.

2.      Defendant, Johnson & Johnson Consumer Products Company, Division of

Johnson & Johnson Consumer Companies, Inc. (hereinafter referred to as "Johnson & Johnson")

is an international corporation which produces a wide variety of medications and health related

products, including the over the counter Neosporin® topical, first aid antibiotic ointments and

creams, Neosporin® Antibiotic Ointment, NEO TO GO!® antibiotic wipes, and NEO TO GO!®

antiseptic spray.

3.      Johnson & Johnson, a domestic New Jersey corporate entity, maintains a

principal place of business at the address set forth in the caption.

4.    At all times material to this action, Johnson & Johnson acted through its directors, corporate officers, actual agents, ostensible agents, and employees, all of whom were conducting themselves within the normal course and scope of their employment.

<u>**CLASS ALLEGATIONS**</u>

5.    Plaintiff incorporates all of the above paragraphs as if set forth fully herein.

6.    Plaintiff brings this action on behalf of herself and as a class action, pursuant to Rule 4:32 of the New Jersey Rules of Civil Procedure, on behalf of all other New Jersey residents who, since its introduction into the marketplace in or around 2008, have purchased Neosporin® NEO TO GO!® first aid antiseptic/pain relieving spray, excluding Johnson & Johnson and any person related to or affiliated with Johnson & Johnson.

7.    The class is so numerous that joinder of all members is impracticable.

8.    Tens of thousands of people from all over the State of New Jersey have purchased Neosporin® NEO TO GO!® first aid antiseptic/pain relieving spray at a wide variety of commercial establishments, including grocery stores, pharmacies, convenience stores, and online distributors.

9.    There are questions of law and/or fact common to the class, including, but not limited to the following:

        a.    **Whether Johnson & Johnson engaged in unconscionable commercial practices, deception, and/or fraud in its labeling, marketing, advertising and/or distribution of Neosporin® NEO TO GO!® First Aid Antiseptic/Pain Relieving Spray by**

deceptively using its Neosporin® Signature Gold Mark, Neosporin® Trade Dress, and goodwill associated with "Neosporin®", a product widely recognized and promoted in the marketplace as containing a "triple antibiotic formula" on a non-antibiotic product known as "Neosporin® NEO TO GO!®", a spray bottle which contains benzalkonium chloride, a liquid comparable to mere alcohol, but sold at almost one thousand (1000) times what equivalent alcohol/antiseptic would cost in the marketplace;

b.     Whether the average consumer could have been misled by the unconscionable, fraudulent or deceptive marketing, advertising, and/or sale practices of Johnson & Johnson with respect to Neosporin® NEO TO GO!® First Aid Antiseptic/Pain Relieving Spray; and

c.     Whether such unconscionable, deceptive or fraudulent practices have led to consumers being damaged.

10.    The claims of Plaintiff are typical of the claims of the class.

11.    Each class member's claim arises from the identical course of events and each class member makes similar legal arguments, including claims for relief pursuant to the New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 through 56:8-184), and factual arguments to prove Johnson & Johnson's liability.

12.    The interests of all class members are fully aligned.

13.     Liability discovery, including interrogatories, requests for production of documents, and depositions of Johnson & Johnson's corporate representatives, including but not limited to persons most knowledgeable of the development, marketing, advertising, labeling, distribution, and sale of Neosporin® NEO TO GO!® First Aid Antiseptic/Pain Relieving Spray, will be identically applicable to the claims of each member in the class.

14.     All liability expert reports, with respect to the development, marketing, advertising, labeling, distribution, and sale of Neosporin® NEO TO GO!® First Aid Antiseptic/Pain Relieving Spray, will be identically applicable to the claims of each member in the class.

15.     Plaintiff will fairly and adequately protect the interests of the class.

16.     The interests of Plaintiff and members of the class are not antagonistic. Those interests are to establish the liability of Johnson & Johnson, and obtain the relief sought in this action.

17.     Plaintiff has obtained qualified and experienced counsel to pursue this litigation, who are committed to protecting the interests of the class.

18.     The prosecution of separate actions by individual members of the class, could create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for Defendant.

19.     The questions of law and fact common to the members of the class predominate over any *de minimis* issue that may affect a class member on an individual basis, and a class action is unquestionably superior to any other available methods for the fair and efficient adjudication of the claims asserted herein for all parties involved.

20.     Indeed, separate adjudications of all of the individual claims that make up the class would result in significant and unnecessary expenditures of party and judicial resources, and said waste would be eliminated if a class action is certified by this Honorable Court.

**WHEREFORE**, Plaintiff Marguerite McNamee, individually and on behalf of all others similarly situated, respectfully requests that this Honorable Court **(a)** enter an Order certifying that this action be maintained as a class-action pursuant to the New Jersey Rules of Civil Procedure, **(b)** enter an Order enjoining Johnson & Johnson from continuing their improper conduct, and **(c)** enter an Order authorizing direct notice of the action to all members of the class.

## JURISDICTION AND VENUE

21.     Plaintiff incorporates all of the above paragraphs, as if set forth fully herein.

22.     All captioned parties are residents of the State of New Jersey, including Johnson & Johnson.

23.     The proposed class is confined to citizens and residents of the State of New Jersey, and the class is proceeding under the New Jersey Consumer Fraud Act.

24.     Johnson & Johnson is a domestic New Jersey corporation that is licensed and authorized to conduct and transact business within the State of New Jersey, and regularly engages a significant portion of its general business in the State of New Jersey, including Camden County for the express purpose of realizing pecuniary benefits. Moreover, Plaintiff purchased the subject Neosporin® NEO TO GO!® First Aid Antiseptic/Pain Relieving Spray in Camden County.

25.     Venue is properly vested in Camden County due to the fact that Johnson & Johnson regularly and routinely conducts significant business therein.

## FACTUAL BACKGROUND

26.     Plaintiff incorporates all of the above paragraphs, as if set forth fully herein.

27.     Johnson & Johnson is a multinational corporation and a manufacturer of prescription, non prescription drugs, and health related products.   Among the products manufactured, marketed, advertised, and distributed by Johnson & Johnson is Neosporin First Aid Antibiotic Ointment®.

28.     Neosporin First Aid Antibiotic Ointment® (hereinafter "Neosporin®") is a topical, first aid antibiotic ointment, packaged in a tube and available for over-the-counter ("OTC") purchase by consumers.

29.     The intended and marketed use for Neosporin®  is the prevention of infection and pain relief at the sites of scratches, cuts and other minor wounds.  The instructions on the product call for the user to clean the site of the wound, apply a small amount of the ointment thereon, and cover with a bandage.

30.     Neosporin® contains, as active ingredients, the antibiotics Neomycin Sulfate, Polymyxin B, and Bacitracin Zinc.  As such, the public at large has become familiar with Neosporin® as an OTC "triple antibiotic".

31.     Johnson & Johnson additionally manufactures, markets, advertises, and distributes "Maximum Strength Neosporin®", an OTC substance which contains the same active antibiotic ingredients as Neosporin® as well as the pain reliever Pramoxine.

32.     Neosporin® and Maximum Strength Neosporin® are packaged, marketed, advertised, distributed, and sold in boxes that, in an attempt to capitalize on the product's

established goodwill and reputation, prominently display the Neosporin® Signature Gold Mark, and the Neosporin® Trade Dress.

33.     Johnson & Johnson additionally manufactures, markets, advertises, and distributes another product called Neosporin® NEO TO GO!® Single Use Packets.

34.     Neosporin® NEO TO GO!® Single Use Packets are packages of ten single use packets which each contain a single dose of original Neosporin® antibiotic ointment.  This product is advertised and marketed on the basis on their size, convenience and portability.

35.     Johnson & Johnson additionally manufactures, markets, advertises, and distributes Neosporin® NEO TO GO!® as a spray (hereinafter "the subject spray") , which is sold in 7.7ml (0.26 oz) spray bottles.  According to Johnson & Johnson's official website the subject spray "[i]s specifically designed to fit anywhere to give you infection protection anytime, anywhere".

36.     However, unlike Neosporin®, Maximum Strength Neosporin® , and Neosporin® NEO TO GO!® Single Use Packets, the subject spray does not contain any antibiotics, but is manufactured, marketed, advertised, and distributed in a manner that intentionally, recklessly, and/or negligently confuses and misleads consumers, including Plaintiff, into believing that they have purchased a product that contains antibiotics.

37.     In particular, the subject spray is manufactured, marketed, advertised, and distributed with the same Neosporin® Signature Gold Mark, Neosporin® Trade Dress, and goodwill associated with Neosporin®, Maximum Strength Neosporin®, and NEO TO GO!® Single Use Packets, all of which, unlike the spray, contain antibiotics.

38.     Neosporin®, Maximum Strength Neosporin®, Neosporin® NEO TO GO!® Single Use Packets, and the subject spray are all sold as part of the same product line. All,

four products are marketed using the same or extremely similar advertising slogans. All four products are packaged using (a) the same green and yellow color scheme, (b) the Neosporin® Signature Gold Mark, (c) the Neosporin® Trade Dress, and (d) the goodwill and reputation associated with each of them.

39.   Notably, the Neosporin® family of products also includes non-antibiotic products, including Neosporin® LT® Lip Treatment, Neosporin® AF® Athlete's Foot Cream, Neosporin® AF® Athlete's Foot Spray Powder, Neosporin® Athlete's Foot Spray Liquid, and Neosporin® AF® Jock Itch Cream. However, these non-antibiotic products are not manufactured, marketed, advertised, or distributed with either the Neosporin® Signature Gold Mark or the Neosporin® Trade Dress, and therefore do not capitalize on the goodwill and antibiotic reputation associated with each of them.

40.   Layperson consumers, including Plaintiff and the proposed class, who were familiar with antibiotic Neosporin®, were intentionally, recklessly, and/or negligently misled by Johnson & Johnson into believing that the subject spray, using the same Neosporin® Signature Gold Mark, the Neosporin® Trade Dress, and the goodwill associated with each of them, contained the same antibiotic ingredients.

41.   Additionally, layperson consumers, including members of the proposed class, who were familiar with Neosporin® NEO TO GO!® Single Use Packets were intentionally, recklessly, and/or negligently misled to believe that similarly-named subject spray contained the same antibiotic ingredients.

42.   The subject spray is priced between four and seven dollars ($4.00-$7.00) for a 7.7 milliliter spray bottle, which is significantly and exponentially more expensive price for a much smaller volume than other brand name topical antiseptic products with the same or similar

active ingredients. For comparison purposes, isopropyl alcohol (a common antiseptic) is typically sold for less than one dollar ($1.00) for sixteen (16) fluid ounces, which is approximately sixty-two (62) times larger than a bottle of the subject spray.

43.    The subject spray uses Benzalkanium Chloride as the active First Aid Antiseptic.    According to the packaging, the subject spray contains 0.00995 milliliters of Benzalkanium Chloride.    A 120 milliliter bottle of Benzalkonium Chloride (which is approximately 15.5 times the amount contained in a full bottle of the subject spray) typically costs $3.99.

44.    The extraordinary and unreasonable price differential between the subject spray and common antiseptic products, can only be explained by the fact that Johnson & Johnson has intentionally, recklessly, and/or negligently misled consumers into believing that the subject spray contains antibiotic ingredients.    In short, Johnson & Johnson's deceptive manufacturing, marketing, advertising, and distribution of the subject spray has led consumers to believe that they are paying a higher price for the extra infection prevention that is provided by an antibiotic, when in fact the spray contains no antibiotics whatsoever.

## COUNT I
## UNFAIR TRADE PRACTICES

45.    Plaintiff incorporates by reference all of the above paragraphs as if set forth fully herein.

46.    By manufacturing, marketing, advertising, and distributing the subject spray, Johnson & Johnson violated the New Jersey Unfair Trade Practices law, set forth at N.J.S.A. 56:8-1 through 56:8-184 (alternatively known as the "Consumer Fraud Act") by engaging in conduct that constitutes unfair trade practices, defined, in part, as follows:

a.   The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby.

b.   The advertisement of merchandise as part of a plan or scheme not to sell the item or service so advertised or not to sell the same at the advertised price.

47.   The acts described in detail above by Johnson & Johnson constitutes unconscionable commercial practices, misrepresentations, concealment, suppression, or omission of material facts with the intent that Plaintiff and members of the proposed class would rely upon such concealment, suppression or omission in connection with the purchase of the subject spray, and Johnson & Johnson is therefore are in violation of the New Jersey Unfair Trade Practices law.

48.   Johnson & Johnson violated the New Jersey Unfair Trade Practices law when it manufactured, marketed, advertised, and distributed the subject spray with the same Neosporin® Signature Gold Mark, the same Neosporin® Trade Dress, and the goodwill associated with each of them as it uses for Neosporin®, Maximum Strength Neosporin®, and Neosporin® NEO TO GO!® Single Use Packets, which, unlike the subject spray, contain antibiotics.

49.   Plaintiff and the members of the proposed class, suffered a measurable and easily-calculable ascertainable economic loss between the value of an antiseptic and the cost of the subject spray.

50.   Johnson & Johnson's deceptive and improper use of the Neosporin® Signature Gold Mark, the Neosporin® Trade Dress, and the goodwill associated with each of

them on the subject spray caused Plaintiff and the members of the proposed class to mistakenly purchase a non-antibacterial product and correspondingly suffer the ascertainable and easily-calculable loss between the value of an antiseptic and the cost of the subject spray.

51.     As a result of the aforementioned violations of the New Jersey Unfair Trade Practices law by Johnson & Johnson, Plaintiff and the members of the class have suffered ascertainable losses and now seek to recover damages for the loss they have sustained as a result of Johnson & Johnson's wrongful conduct, together with treble damages, attorney's fees, filing fees and reasonable costs of suit.

## COUNT II
## BREACH OF WARRANTY

52.     Plaintiff incorporates by reference all previous paragraphs as if set forth fully herein.

53.     Johnson & Johnson, through media advertising, by their appearance and packaging and through the dissemination of brochures, manuals and pamphlets, made representations about the character, quality and/or recommended uses of NEO TO GO! spray.

54.     Plaintiff, and other New Jersey citizens and residents, relied on Johnson & Johnson's representations about the character, quality and/or recommended uses of NEO TO GO! spray.

55.     As a result of the misleading marketing and advertising of the NEO TO GO! spray (and for all reasons set forth in Plaintiff's claims for relief pursuant to the New Jersey Consumer Fraud Act) Johnson & Johnson, in selling the NEO TO GO! spray, breached implied warranties of merchantability pursuant to N.J. Stat. § 12A:2-314 on which Plaintiff and other New Jersey residents relied.  These breaches of warranties were substantial factors in inducing Plaintiff, and other New Jersey residents to purchase NEO TO GO! spray, and falsely indicated that the

spray would provide infection protection in a manner similar to Johnson & Johnson's antibiotic product lines.

56.  As a result of the misleading marketing and advertising of the NEO TO GO! spray (and for all reasons set forth in Plaintiff's claims for relief pursuant to the New Jersey Consumer Fraud Act) Johnson & Johnson, in selling the NEO TO GO! spray, breached implied warranties of fitness for a particular purpose pursuant to N.J. Stat. § 12A:2-315, on which Plaintiff and other New Jersey residents relied.  These breaches of warranties were substantial factors in inducing Plaintiff and other New Jersey residents to purchase NEO TO GO! spray, and falsely indicated that the spray  would provide infection protection in a manner similar to Johnson & Johnson's antibiotic product lines.

57.  As a result of the aforementioned breaches of warranty, Plaintiff and the members of the class have suffered ascertainable losses and now seek to recover damages for the loss they have sustained as a result of Johnson & Johnson's wrongful conduct, together with attorney's fees, filing fees and reasonable costs of suit.

**WHEREFORE**, Plaintiff Marguerite McNamee, individually and on behalf of all others similarly situated, respectfully demands:

1.  An Order certifying that this action be maintained as a class-action pursuant to the New Jersey Rules of Civil Procedure.

2.  Judgment on the First Count (Unfair Trade Practices) against Johnson & Johnson for damages in an amount to be determined at trial, treble damages, attorney's fees, filing fees and reasonable costs of suit.

3.  A Court Order enjoining Johnson & Johnson from continuing their illegal conduct and ordering immediate direct notice to all members of the class.